UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                               :

EASTERN ORTHODOX            :
BROTHERHOOD OF THE KELLION    :
OF THE HOLY TRANSFIGURATION  :
& CONSTANTIN FLORIN SALGAU,   :        CASE NO. 1:13-CV-00478
                               :

        Plaintiffs,          :

                               :

    v.                    :        OPINION & ORDER
                               :        [Resolving Doc. Nos. 17, 18]

JANET NAPOLITANO, Secretary of   :
Homeland Security, *et al.*,       :

                               :

        Defendants.       :

                               :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs Eastern Orthodox Brotherhood of the Kellion of the Holy Transfiguration ("Brotherhood") and Constantin Florin Salgau seek review of Defendants'—Janet Napolitano, Secretary of Homeland Security,[1] Eric Holder, Attorney General, and Alejandro Mayorkas, Director of Citizenship and Immigration Services—denial of the Brotherhood's immigration visa petition on behalf of Salgau.[2]  Plaintiffs and Defendants both move for summary judgment.[3]  For the reasons that follow, the Court **DENIES** Plaintiffs' motion for summary judgment and **GRANTS** Defendants' motion for summary judgment.

## I. Factual and Procedural Background

Plaintiff Constantin Florin Salgau is a Romanian citizen and was ordained as a Romanian

---

[1] Janet Napolitano is no longer the Secretary of Homeland Security, but no party has moved to substitute her as a party.

[2] Doc. 1.

[3] Docs. 17 (Defendants), 18 (Plaintiffs).

Case No. 1:13-cv-00478
Gwin, J.

Orthodox priest there.[4/]  Salgau came to the United States on a B-2 visa in 1998 and remained here
after his visa expired.[5/]

Starting in April 1999, Salgau worked as a pastor for the Holy Trinity Romanian Parish
Church in Philadelphia, Pennsylvania.[6/]  On January 4, 2006, the Holy Trinity Romanian Parish
Church filed an I-360 Petition for Salgau as a Special Immigrant Religious Worker.[7/]  The Church
earlier filed two unsuccessful I-360 petitions on his behalf.[8/]

The Citizenship and Immigration Services approved this petition.[9/]  Salgau then filed an I-485
Application for Adjustment of Status and an I-765 Application for Employment Authorization.[10/]
Citizenship and Immigration Services granted Salgau one year of employment authorization
contingent on his application for adjustment of status.[11/]

On July 26, 2006, Salgau resigned from the Holy Trinity Romanian Parish Church.[12/]  On
August 10, 2006, Citizenship and Immigration Services received a letter from the Church notifying
the agency that Salgau had stopped working at the Church.[13/]  On October 25, 2006, Citizenship and
Immigration Services revoked approval of the Church's I-360 Petition and denied Salgau's I-485
Application for Adjustment of Status.[14/]

On March 25, 2007, Plaintiff Eastern Orthodox Brotherhood of the Kellion of the Holy

---

[4/]Doc. 16-1 at 69, 133.
[5/]Id. at 133.
[6/]Doc. 16-2 at 1142.
[7/]Doc. 16-5 at 2264.
[8/]Doc. 16-2 at 1138 (1999 Petition), 968 (2001 Petition).
[9/]Doc. 16-1 at 349.
[10/]Docs. 16-5 at 2116 (I-485), 16-1 at 37 (I-765).
[11/]Doc. 16-1 at 37.
[12/]Doc. 16-1 at 164.
[13/]Doc. 16-5 at 2577.
[14/]Id. at 2112, 2264.

Case No. 1:13-cv-00478
Gwin, J.

Transfiguration appointed Plaintiff Salgau as a clergy member.[15]  On November 16, 2007, the

Brotherhood filed a new I-360 Petition for Special Immigrant Religious Worker on behalf of

Salgau.[16]

On July 16, 2009, an administrative law judge denied the Brotherhood's petition on Salgau's

behalf.[17]  In denying the petition, the administrative law judge found that Salgau was not qualified

as a religious worker and the Brotherhood did not show Salgau had worked in lawful religious

worker immigration status for the two years before the petition.[18]

On March 16, 2011, the Administrative Appeals Office affirmed.[19]  The appeals board found

that although Salgau was qualified as a religious worker, there were four other reasons to deny the

Brotherhood's petitions: 1) Salgau did not have two years of employment as a religious worker in

a lawful immigration status before the filing of the petition; 2) Salgau did not work solely as a

religious worker in the two years before the filing of the petition; 3) the Brotherhood did not submit

a detailed employer attestation; and 4) the Brotherhood did not submit sufficient evidence of

compensation for Salgau.[20]

On September 18, 2012, the appeals board denied the Brotherhood's motion for

reconsideration.[21]

On March 4, 2013, Salgau and the Brotherhood sued the Defendants over the denial of the

---

[15]/Doc. 16-1 at 181.
[16]/Id. at 133-36.
[17]/Id. at 64-68.
[18]/Id.
[19]/Id. at 30-39.
[20]/Id.
[21]/Id. at 4-10.

Case No. 1:13-cv-00478
Gwin, J.

Brotherhood's petition.[22]

On October 28, 2013, all parties moved for summary judgment.[23]  Plaintiffs Salgau and the Brotherhood argue that the special immigrant religious worker statute does not require Salgau to have worked as a religious worker in lawful immigration status.  Plaintiffs also argue that the administrative law judge's decision violates the Religious Freedom Restoration Act.[24]  Plaintiffs also say that the other reasons given for denying the Brotherhood's petition are arbitrary and capricious.[25]

Defendants say the denial of the Brotherhood's petition was not an abuse of discretion because the Citizenship and Immigration Services regulations are proper interpretations of the special immigrant religious worker statute and substantial evidence justified the agency's determination.[26]

## II. Legal Standard

### A.    Summary Judgment Under the Administrative Procedure Act

This Court reviews the decisions of Citizenship and Immigration Services under the standard given in 5 U.S.C. § 706.  The Court may not overturn final agency action unless it is unsupported by substantial evidence or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[27]

---

[22] Doc. 1.  Salgau's name appears as a plaintiff in the complaint, but it does not appear on more recent filings. *See, e.g.*, Doc. 18.

[23] Docs. 17 (Defendants), 18 (Plaintiffs).

[24] Doc. 18.

[25] Doc. 20 at 1-3.

[26] Docs. 17, 19.

[27] 5 U.S.C. § 706(2)(A), (E).  The remainder of § 706(2) lists other circumstances in which a court may reverse agency action, but the Court will consider those when it considers whether the agency acted "otherwise not in accordance with law."

Case No. 1:13-cv-00478
Gwin, J.

The § 706 standard is the least demanding form of judicial review.[28]  An outcome is not arbitrary or capricious "when it is possible to offer a reasoned explanation [for it], based on the evidence."[29]  To satisfy the substantial evidence standard, the Board's decisions must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30]

In an appeal from final agency action, summary judgment is appropriate based on the administrative record when the opposing party cannot show a genuine dispute of material fact and the agency action satisfies the standards of § 706.[31]  If, on the other hand, factual uncertainty precludes such judgment, the proper course is to remand the matter to the agency rather than conduct additional fact-finding.[32]

**B.      Special Immigrant Religious Workers**

Congress has authorized certain immigrants who are religious workers to get special visas to serve as clergy in the United States.[33]  The religious organization that will employ the immigrant must file an I-360 Petition for Immigrant.[34]  If the I-360 Petition is granted, the immigrant may seek legal permanent resident status.[35]

Congress has limited special immigration status for religious workers to those religious workers who 1) for the two years before the petition have been members of a religious denomination

---

[28] *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) ((quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)).
[29] *Davis*, 887 F.2d 693 (quoting *Pokratz*, 771 F.2d 209).
[30] *ITT Auto. v. NLRB*, 188 F.3d 375, 384 (6th Cir. 1999) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[31] *Goldin v. FDIC*, 985 F.2d 261, 262 (6th Cir. 1993).
[32] *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).
[33] 8 U.S.C. §§ 1101(a)(27)(C) & 1153(b)(4).
[34] 8 C.F.R. § 204.5(c).
[35] 8 C.F.R. § 245.2.

Case No. 1:13-cv-00478
Gwin, J.

that has a bona fide organization in the United States; 2) seek to enter the United States to work for

that organization; and 3) "ha[ve] been carrying on such vocation, professional work, or other work

continuously for at least the 2 year period described in clause (I)."[36]

The Department of Homeland Security has promulgated an implementing regulation for this

special religious worker visa.[37] The implementing regulations state that a petitioner must show that

the immigrant worked "continuously" as a religious worker for the two years before the petition

"abroad or in lawful immigration status in the United States."[38]

A petitioner must also submit an attestation as to the religious character of the organization,

the number of members and employees, that the immigrant meets the requirements of the statute, and

that "the prospective employer has the ability and intention to compensate the alien at a level at

which the alien and accompanying family members will not become public charges, and that funds

to pay the alien's compensation do not include any monies obtained from the alien."[39]

The regulation also requires the petitioner provide "verifiable evidence of how the petitioner

intends to compensate the alien," such as the compensation of prior, similar employees or budgets.[40]

This version of the regulation entered into effect on November 25, 2008. Before November

25, 2008, when the Brotherhood first submitted its I-360 on Salgau's behalf, the regulation did not

require the work experience in the United States to have been performed in lawful immigration

status, did not require a detailed attestation from the employer, and only required the employer to

submit a letter stating how the employee would be compensated, with the possibility of requests for

---

[36] 8 U.S.C. § 1101(a)(27)(C).
[37] 8 C.F.R. § 204.5(m).
[38] Id. § 204.5(m)(4). Section 204.5(m)(11) requires the petitioner to submit proof of the work performed for the two years preceding the application, which must be in lawful immigration status if performed in the United States.
[39] Id. § 204.5(m)(7).
[40] Id. § 204.5(m)(10).

Case No. 1:13-cv-00478
Gwin, J.

additional information in "doubtful" cases.[41]

### III. Analysis

The Court finds that Citizenship and Immigration Services did not abuse its discretion in denying the Brotherhood's petition on Salgau's behalf on the grounds that 1) Salgau did not work solely as a religious worker during the two years before the petition; 2) the Brotherhood did not submit an employer attestation; and 3) the Brotherhood did not provide sufficient evidence of its ability to pay Salgau. Because these three reasons were independent and adequate reasons to deny the application, the Court does not decide Plaintiffs' challenges to the "lawful immigration status" religious work requirement.

### A.    Working as a Religious Worker "Continuously" for Two Years

Defendants say that the proper interpretation of the two years of "continuous[]" religious work experience required by the special immigrant visa statute and its implementing regulation is that the immigrant must work "solely" as a religious worker during those two years.[42]  Plaintiffs do not dispute that interpretation.[43]

Instead, Plaintiffs say that they did supply evidence to show that Salgau worked solely as a religious worker for the two years before the petition. Although the appeals board says Salgau had odd jobs in 2007, Plaintiffs say these could have been after the petition was filed.[44]

In a letter dated April 8, 2008, the Brotherhood stated, "After separation from Holy Trinity, Father Salgau volunteered with the St. Lucas parish in essentially the same duties through the

---

[41] 8 C.F.R. § 204.5(m) (effective until Nov. 25, 2008).
[42] Doc. 17 at 7 (citing *Hawaii Saeronam Presbyterian Church v. Ziglar*, 243 F. App'x 224, 226 (9th Cir. 2007)).
[43] *See* Doc. 20 at 1-2.
[44] *Id.*

Case No. 1:13-cv-00478
Gwin, J.

Monastery and Brotherhood.  His bank statements show that he supported himself through odd jobs and the support of his brother George Salgau with whom he lived [Exhibit 35].  In March 2007, the Brotherhood and Monastery made a formal commitment for the missionary work of Father Salgau."[45]

This letter clearly implies that Salgau worked on the "odd jobs" to support himself *before* the Brotherhood offered him employment in March 2007.

Moreover, the bank statements the Brotherhood cited to substantiate Salgau's jobs cover the period between October 25, 2006, and April 5, 2007.[46]  The dates on these bank statements, which were specifically to substantiate the "odd jobs" Salgau performed, also imply that the odd jobs occurred before November 2007.

Therefore, substantial evidence existed from which Citizenship and Immigration Services could find that Salgau did not work solely as a religious worker for the two years before the petition, and the agency's decision to deny the petition on this ground was not arbitrary or capricious.

**B.    Detailed Attestation**

Plaintiffs do not say that the Brotherhood submitted an employer attestation; they say that the Brotherhood did not need to submit an employer attestation because the attestation requirement only became effective after the Brotherhood submitted its petition.[47]

Whether Citizenship and Immigration Services may lawfully apply the new regulation to petitions already submitted depends on the Supreme Court's test articulated in *Landgraf v. USI Film*

---

[45]/Doc. 16-1 at 178.
[46]/*Id.* at 358-87.
[47]/Doc. 20 at 2.

Case No. 1:13-cv-00478
Gwin, J.

*Products.*[48]

Under *Landgraf*, the general presumption against retroactivity does not apply if the rulemaker "provided express language indicating that [the rule] was to apply retroactively," and the Court must give effect to the rule as written.[49]  The Court only considers the effect on settled expectations if the rulemaker's intent is not clear.[50]

In the announcement of the final rule, the Department of Homeland Security stated, "All cases pending on the rule's effective date and all new filings will be adjudicated under the standards of this rule."[51]  This is "express language indicating that [the rule] was to apply retroactively."

Accordingly, Citizenship and Immigration Services could lawfully expect the Brotherhood to provide the employer attestation, and the decision to deny the petition on this ground was not arbitrary or capricious.

## C.    Proof of Compensation

Plaintiffs say that the Brotherhood provided sufficient evidence of the Brotherhood's ability to compensate Salgau to satisfy 8 C.F.R. § 204.5(m)(10).[52]

The new regulation, which the Court has already found may be lawfully applied to the Brotherhood's petition, requires "verifiable evidence of how the petitioner intends to compensate the alien," IRS documentation if it exists, and an explanation for why IRS documentation does not

---

[48]511 U.S. 244 (1994).

[49]*Sanders v. Allison Engine Co.*, 703 F.3d 930, 941 n.11 (6th Cir. 2012).  Although *Sanders* described a congressional statute, the Sixth Circuit has applied the *Landgraf* analysis to cases in which a statute or a regulation is to operate retroactively.  *See BellSouth Telecomm., Inc. V. Se. Tel., Inc.*, 462 F.3d 650, 657 (6th Cir. 2006).

[50]*BellSouth Telecomm.*, 462 F.3d at 657-58.

[51]Special Immigrant and Nonimmigrant Religious Workers, 73 Fed. Reg. 72276, 72285 (Nov. 26, 2008) (amending 8 C.F.R. § 204.5(m)).

[52]Doc. 20 at 3.

-9-

Case No. 1:13-cv-00478
Gwin, J.

exist if it does not.[53]

The Brotherhood provided checks written to Salgau in various amounts, Brotherhood bank account statements showing approximately $1,200.00 in total deposits, and an explanation that Salgau received contributions from the parish and around $600 every two weeks when needed from the Brotherhood as total compensation.[54]  The Brotherhood did not submit any IRS documentation or directly explain why those documents were not available.[55]

This is a close question, but the Court cannot conclude that Citizenship and Immigration services acted arbitrarily or capriciously in denying the petition on this ground.

The bank account the Brotherhood provided had $1,200.00 in it, or enough money to cover four weeks of expenses if Salgau needed them.  The Brotherhood did not explain the amount of donations it receives a year to determine how quickly the account could be replenished.  And the Brotherhood did not explain what kinds of donations Salgau received directly from the parishes he visited.  Therefore, the agency only had evidence that Salgau could be paid for one month and no indication as to how quickly the Brotherhood could get additional funds from donations.

Citizenship and Immigration Services could reasonably conclude that, despite the several checks written to Salgau, the Brotherhood did not provide sufficient evidence to show it was not at risk of failing to support Salgau under the regulation.

Moreover, the agency could reasonably conclude that the Brotherhood had not adequately

---

[53] 8 C.F.R. § 204.5(m)(10).

[54] Doc. 16-1 at 181 (explanation of compensation for Salgau), 343-47 (Brotherhood bank statements), 497-501 (checks to Salgau).

[55] In the letter explaining how Salgau was compensated, the Brotherhood stated that Salgau was not paid a salary but his needs "are taken care of through a special account established by the Brotherhood," which was "supported by the Brotherhood and the donations it receives."  *Id.* at 181.

-10-

Case No. 1:13-cv-00478
Gwin, J.

explained why it did not provide IRS documentation for Salgau to satisfy the regulation.

Accordingly, the Court cannot conclude that the agency abused its discretion in denying the

Brotherhood's petition on this ground.

**D.      Challenges to the "Lawful Immigration Status" Requirement**

Because the Court has found that the other three bases Citizenship and Immigration Services

provided for denying the petition satisfy judicial review, the Court declines to issue an advisory

opinion on the legality of the "lawful immigration status" requirement under *Chevron U.S.A., Inc.*

*v. National Resource Defense Council*[56] or the Religious Freedom Restoration Act.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for summary judgment and

**GRANTS** Defendants' motion for summary judgment.

IT IS SO ORDERED


Dated: January 14, 2014                         s/         *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[56] 467 U.S. 837 (1984).

-11-